FILED

2010 Aug-23  PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

TOSHIA HANSON,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     CIVIL ACTION NO. 09-G-2021-NE
                                  )
MICHAEL J. ASTRUE,                )
Commissioner of Social Security,  )
                                  )
          Defendant.              )
                                  )
                                  )

## MEMORANDUM OPINION

The plaintiff, Toshia Hanson, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).  The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers.  Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."  McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The

Commissioner's reasons for refusing to credit a claimant's treating physician must be

supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen,

831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a

claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES
## SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant

seeks to establish disability through his or her own testimony of pain or other subjective

symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition
> and either (2) objective medical evidence that confirms the severity of the
> alleged pain arising from that condition or (3) that the objectively
> determined medical condition is of such a severity that it can be reasonably
> expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this

circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective
> medical evidence of a condition that could reasonably be expected to cause
> the pain alleged, neither requires objective proof of the pain itself.  Thus
> under both the regulations and the first (objectively identifiable condition)
> and third (reasonably expected to cause pain alleged) parts of the Hand
> standard a claimant who can show that his condition could reasonably be
> expected to give rise to the pain he alleges has established a claim of
> disability and is not required to produce additional, objective proof of the
> pain itself.  See 20 CFR §§ 404.1529 and 416.929;  Hale at 1011.

<u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  <u>Foote</u> at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

<u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational

5

expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401.

The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims."  Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 19 years old at the time of ALJ Earl Cates's decision, but was still in high school (12th grade) after failing kindergarten and fourth grade.  She was in special education classes and reported earning As and Bs, although to obtain a certificate of attendance.  [R. 57, 58].  The ALJ found the following severe impairments: borderline intellectual functioning, degenerative disc disease of her back, and a history of headaches.  [R. 18].

On December 5, 2003, when the plaintiff was 15 years and 9 months, she obtained a Verbal IQ of 76, Performance IQ of 52, and a Full Scale IQ of 62 on the Wechsler Intelligence Scale for Children - III.  [R. 160].  John G. Hovater, Psy.D., stated, "It is the examiner's impression that these results represent Toshia's level of intellectual functioning at the time of testing."  [R. 164]. These scores are presumed valid for two years.

On June 1, 2006, the plaintiff was seen by John R. Haney, Ph.D., at the request of the Commissioner.  Dr. Haney administered the WAIS-III IQ test, and her results were Verbal IQ 78, Performance IQ 72, and Full Scale IQ 73.  [R. 243].  Dr. Haney said:

> These scores placed the patient in the borderline range of intellectual functioning, and corresponded to the fourth percentile.  This is seen as a recently accurate estimate of the patient's current level of intellectual functioning.  The patient was fairly cooperative and seemed to put forth her best effort.  Most of the patient's subtest scores were significantly below average, no particular strengths were noted.  The current performance is similar to previous evaluations conducted on 12-5-03 when she earned a full scale IQ score of 62 with a WISC-III, and 11-4-97 when the full scale IQ score was 73 with the same instrument.

[R. 243].  Dr. Haney stated, "The patient's ability to function in most jobs appeared impaired due to the patient's combination of physical problems and intellectual limitation."  [R. 244].  Dr. Haney regarded the statements of the plaintiff and her mother as truthful.  [Id.].

As for her physical condition, a treating physician, F. Calame Sammons, M.D., on December 6, 2005, opined that the plaintiff suffers from adolescent disc disease with annular tears.  [R. 283].  The annulus is part of the intervertebral disc:

> Intervertebral discs are composed of an annulus fibrosus and a nucleus pulposus.
>
> The annulus fibrosus is a strong radial tire–like structure made up of lamellae; concentric sheets of collagen fibers connected to the vertebral end plates. The sheets are



orientated at various angles. The annulus fibrosus encloses the nucleus pulposus.

http://www.spineuniverse.com/displayarticle.php/article1267.html   Dr. Sammons wrote:

> Ms. Hanson has been seen my [sic] me for problems related to her back. The patient has adolescent disk disease with annular tears and radicular pain. She is only 16 years of age. She is having considerable problems performing her tasks at school because of pain with sitting, bending, and twisting. Our typical treatment for this in adults would be lumbar interbody fusion. However, at her age we do not want to do this type of procedure on such a young individual. Additionally, we did not want this patient to become addicted to chronic pain medicine to help cope with her pain. The transcutaneous electrical nerve stimulator [TENS unit] has provided an alternative for this patient.
>
> Please reconsider this treatment modality for this patient. <u>She has tried epidural steriods, physical therapy, and activity modification all without relief of pain</u>.

[R. 283].(emphasis added)

Because Dr. Sammons is a specialist in the field of pediatric orthopedics and spinal surgery, his opinion is entitled to more weight in this area.[1]  In his decision, the ALJ makes no mention of the opinion of Dr. Sammons.  Instead, the ALJ refers to a May 30, 2006, consultative physical examination by Robert A. Sparks, III, M.D.  Dr. Sparks referred to a September 30, 2004, MRI of the lumbar spine which showed "minimal annular bulges at L4-5 and L5-S1."  [R. 245].  Dr. Sparks noted her medications:

> Miss Hanson has a TENS unit and uses that 2-3 times a day for pain relief. Her present medications are:  Protonix 40mg once daily; Bentyl 25mg once

---

[1]  "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist."  20 C.F.R. § 404.1527(d)5)

daily; Neurontin 100mg in the morning, 100mg at noon and 200mg at
bedtime; Naprosyn 500mg twice a day; and multi-vitamins.

[Id.].  However, Dr. Sparks opined:

> There is no objective sign of any abnormality on physical examination of
> this woman.  She has full spine mobility.  She can reach to within 6 inches
> of her toes when I asked her to bend forward while keeping her knees
> straight.  Lateral bending and extension are completely normal.  There is no
> paravertebral muscle spasm as the range of motion exam is carried out.
> There is no neurologic abnormality.  Knee jerks and ankle jerks are
> symmetrical and are of normal amplitude.  She can walk on her tiptoes and
> on her heels without apparent weakness.  Straight leg raising does not cause
> sciatic stretch pain.  Hip rotation does not duplicate her pain.  She can squat
> and arising [sic] from a squat without any difficulty.
>
> *        *        *
>
> Based on the lack of physical findings I must conclude that Miss Hanson is
> physically able to do work related activities such as sitting, standing,
> walking, lifting, carrying, and handling objects.

[R. 245-246].  The opinion of this one-time examiner is at odds with the opinion of the

plaintiff's treating physician, Dr. Sammons.  In ignoring the opinion of Dr. Sammons, the

Commissioner failed to properly refute a treating physician's testimony, and as a matter

of law that testimony must be accepted as true.

At the hearing, the plaintiff testified that her back hurts constantly and she

cannot sit or stand for more than 15 minutes at one time.  [R. 63].  At school she has to

shift positions at her desk because of pain.  [R. 65].  She also testified that she gets

headaches every couple of weeks, accompanied by nausea, with photophobia, which hurt

so much that she has to stay in a dark, quiet room.  [R. 66].  Her medication for the

headaches sometimes helps and sometimes does not.  [Id.].

10

The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." [R. 20]:

> The claimant alleges significant limitations due to her impairments. However, when completing her Daily Activities Questionnaire in April 2006, she reported numerous activities. She reported she goes to school, shops occasionally, and does household chores including dusting and folding laundry. In her spare time, she reported she reads, watches television, and plays on the computer. The undersigned finds the claimant has not reported activities which are significantly limiting or consistent with the disabling limitations she alleges. Furthermore, she is a full-time student and the undersigned finds her ability to attend school on a full time basis is also inconsistent with significant limitations in her functioning.

[R. 20].

The ALJ spoke further as to her credibility:

> The claimant's testimony did not appear credible, it seemed rehearsed. The claimant is currently a senior in her final year of high school and her attendance is good. She is not available to work because she is going to school. If she were not going to school, she would be capable of working.

[R. 23].

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997). As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic
> or an amputee.  Similarly, shopping for the necessities of life is not a
> negation of disability and even two sporadic occurrences such as hunting
> might indicate merely that the claimant was partially functional on two
> days.  Disability does not mean that a claimant must vegetate in a dark room
> excluded from all forms of human and social activity.  . . . It is well
> established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability

to engage in gainful employment that is the key, not whether a plaintiff can perform

minor household chores or drive short distances.  In Easter v. Bowen, the court observed

as follows:

> Moreover, an applicant need not be completely bedridden or unable to
> perform any household chores to be considered disabled. See Yawitz v.
> Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to
> perform as required on a daily basis in the "sometimes competitive and
> stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d
> 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138,
> 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are

concerned with substantial capacity, psychological stability, and steady attendance . . . ."

867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).  As

Judge Allgood observed in Lamb v. Bowen:  "[T]he record is replete with evidence of a

medical condition that could reasonably be expected to produce the alleged pain.  No

examining physician ever questioned the existence of appellant's pain.  They simply

found themselves unable to cure the pain."  847 F.2d 698 (11th Cir. 1988).

With this standard in mind, it is clear that the ALJ's articulated reasons for

rejecting the plaintiff's pain testimony are not supported by substantial evidence.

12

Therefore, the ALJ failed to satisfy the requirements of <u>Hale</u>.  The conclusion of that

court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons

for refusing to credit the claimant's pain testimony, but none of these reasons is supported

by substantial evidence.  It follows, therefore, that claimant's pain testimony has been

accepted as true." <u>Hale</u>, at 1012.

> At the hearing, the vocational expert testified:

> Q:     If there was a problem, assuming a person had a problem with
>        attention, and let's say it was less than two hours they could maintain
>        attention, would that change any of the factors with the, these [sic]
>        work, this employment here?

> A:     Yes, sir.  That would generally be indicative of a greater than
>        moderate impairment in a person's ability to maintain attention and
>        concentration, and if they're having a greater than moderate
>        impairment in those areas, then that would generally preclude them
>        from doing any type of employment.

> ALJ:   Okay.  If someone had a, migraine headaches, let's say, every two
>        weeks unexpectedly, and the claimant had to take off work for three
>        or four hours, I mean, how would that impact on ability to perform
>        these jobs?

> A:     Well, assuming that they'd have to miss work during those periods
>        of time, you know, you'd be missing more than two days a month,
>        and that would generally result in excessive absenteeism and
>        inability to maintain employment.

[R. 73-74].  Taking the testimony of the plaintiff and the plaintiff's treating physician as

true, in conjunction with the vocational expert's testimony, the plaintiff is unable to work.

**CONCLUSION**

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 23 August 2010.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.

14